UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES A. BUSHEY, JR.,

                              Plaintiff,

    v.                                                                 **DECISION AND ORDER**
                                                                                     17-CV-450S
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

1.      Plaintiff James A. Bushey, Jr., challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since February 27, 2013, due to lower back injury, herniated discs, and back fusion surgery in September 2013. Plaintiff contends that his impairments rendered him unable to work, and thus, that he is entitled to disability benefits under the Act.

2.      Plaintiff applied for disability benefits on August 15, 2014,[1] which the Commissioner denied on November 13, 2014. Plaintiff thereafter requested a hearing before an ALJ. On November 2, 2016, ALJ Gregory M. Hamel held a hearing in Alexandria, Virginia, at which Plaintiff, with counsel, appeared via video from Buffalo, New York. An impartial vocational expert also appeared at the hearing via telephone. The ALJ considered the case *de novo*, and on December 12, 2016, issued a decision denying Plaintiff's application for benefits. The Appeals Council denied review on March 23, 2017.

---

[1] Both the ALJ in his written decision and the Commissioner in its brief mistakenly state that Plaintiff applied for disability benefits on February 19, 2014.

1

Plaintiff filed the current action on May 22, 2017, challenging the Commissioner's final decision.[2]

3. On June 18, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 12). On August 17, 2018, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 15). Plaintiff filed a reply on September 7, 2018 (Docket No. 17), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2] The ALJ's December 12, 2016 decision became the Commissioner's final decision in this case when the Appeals Council denied Claimant's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

3

> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work. Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since February 27, 2013, the alleged onset date (R. at 14);[3] (2) Plaintiff has the following severe impairments: lumbosacral disc disease post-surgery with lumbar radiculopathy and a history of ulnar nerve surgery (R. at 14); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in the C.F.R. (R. at 15); (4) Plaintiff retained the residual functional capacity ("RFC") to

---

[3] Citations to the underlying administrative record are designated as "R."

4

perform light work with certain limitations (R. at 15);[4] (5) Plaintiff was unable to perform any past relevant work (R. at 19); and (6) jobs existed in significant numbers in the national economy that the claimant could have performed (R. at 20). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—February 27, 2013, through June 30, 20115, the date last insured. (R. at 21).

10. Plaintiff's brief raises four challenges to the ALJ's decision. The first three challenges concern whether the ALJ's RFC determination rests on substantial evidence; the fourth challenge is that the ALJ "failed to properly assess Plaintiff's inability to maintain minimal standards of attendance in any occupation" in rendering his RFC determination. (Docket No. 12-1 at 17-25). Plaintiff's arguments are addressed in turn.

11. First, Plaintiff argues that the RFC does not rest on substantial evidence because the ALJ (1) erred when he "failed to acknowledge and evaluate" an August 13, 2013 opinion of independent medical examiner Dr. Brothman; (2) "discounted or disregarded every medical opinion of record, failed to point to any opinion to support its RFC finding, failed to properly develop the administrative record, and arbitrarily substituted his own judgment for that of competent medical opinion [sic]"; and (3) "overlooked evidence generated after the Date Last Insured which reflected upon Plaintiff's condition before that date." (Id. at 17-23).

12. The Regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the

---

[4] The ALJ specifically found that Plaintiff was able only occasionally to climb stairs, balance, stoop, kneel, crouch and crawl, but could not climb ladders and similar devices, and was not able to work in hazardous environments. The ALJ also found that Plaintiff was able to use his hands and arms for frequent but not constant handling and reaching activities. (R. at 15).

5

> weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

13. In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consol Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)). Even if there is substantial evidence for the plaintiff's position, a reviewing court must uphold the ALJ's decision if there is substantial evidence to support the defendant's position. See Yancy v. Apfel, 145 F.3d 106, 111 (2d Cir.1998). The substantial evidence standard means that once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012)

14. Here, the ALJ's written determination includes an analysis of the medical opinions of Dr. William Capicotto, Dr. George Hochreter, Dr. John Fahrbach, and Dr. Nicholas Dragonette. (R. at 16-18). Accordingly, for the reasons discussed below, the ALJ's determination rests on substantial evidence.

6

15. Dr. Capicotto treated Plaintiff nearly 20 times between April 2013 and August 2016. Treatment notes from two visits in April 2013 reflect Plaintiff reported lower back pain which was increased when bending, lifting, twisting, and turning, but that his pain was relieved when changing positions. (R. at 535, 543). Visits in June, July, and August of 2013 reflect Plaintiff experienced lower back pain and a painful heel toe walk. (R. at 556, 562, 662). In September of 2013, Dr. Capicotto performed surgery on Plaintiff consisting of L4-5 and L5-S1 diskectomies and decompression of the spinal cord and nerve roots. (R. at 414-20). One month after his surgery, in October 2013, Plaintiff attended a post-operative visit with Dr. Capicotto where he complained that his pain was aggravated with prolonged sitting or standing, repetitive twisting, turning, lifting, bending, pushing or pulling. (R. at 576, 579). In November 2013, Plaintiff told Dr. Capicotto that he was experiencing intermittent numbness and tingling in both legs, but that his symptoms improved when he changed positions. (R. at 581-82). Plaintiff also reported that his pain was aggravated with prolonged sitting or standing, repetitive twisting, turning, lifting, bending, pushing or pulling. (R. at 581-82). Upon examination, Dr. Capicotto concluded that Plaintiff had "no signs of acute distress." (R. at 583). In February, May, August, and November of 2014, and in March and April of 2015, Plaintiff reported to Dr. Capicotto that his leg pain was aggravated with prolonged sitting or standing, repetitive twisting, turning, lifting, bending, pushing, or pulling, and Dr. Capicotto opined at each visit that Plaintiff had a total, temporary disability. (R. at 423-24, 433-34, 447-48, 593, 606, 720).

16. In August 2016, Dr. Capicotto completed a medical source statement determining that Plaintiff was "totally temporarily disabled" due to the fact that he was

"very limited" in his ability to walk, stand, sit, lift, carry, push, pull, and bend. (R. at 786). The ALJ reasonably afforded "little weight" to Dr. Capicotto because he repeatedly concluded that Plaintiff was disabled when it is well established that "disability is a determination reserved to the Commissioner" and therefore that conclusion was not binding on the ALJ. Holdridge v. Comm'r of Soc. Sec., 351 F. Supp. 3d 316, 325 (W.D.N.Y. 2018); see also 20 C.F.R. § 404.1527. The ALJ also afforded little weight to the specific findings that Plaintiff was "very limited" in his ability to perform many life activities because that assessment was not inconsistent with the ALJ's conclusion that Plaintiff retained the RFC to perform light work.

17. Dr. Fahrbach evaluated Plaintiff on March 7, 2013. He noted that Plaintiff was in significant discomfort upon rising from a seated position, but that Plaintiff's "general exam [was] consistently normal" and found Plaintiff only "slightly limited." (R. at 364-65). Notwithstanding those findings, Dr. Fahrbach concluded that Plaintiff should remain out of work. And Dr. Hochreter, who examined Plaintiff on September 11, 2014, diagnosed Plaintiff with lower back pain with lumbar radiculopathy and concluded that Plaintiff's "current degree of causally related disability to be moderate, partial (50%)." (R. at 475). But he also recorded that Plaintiff "believe[d] he can lift 10-15 lbs" and "can bend and twist occasionally." (R. at 474). The ALJ reasonably afforded little weight to these opinions because disability determinations are reserved to the Commissioner, especially given the fact that that their conclusions were not inconsistent with the RFC finding in this case. Cf. Holdridge, 351 F. Supp. 3d at 325-26 (a physician's analysis "does not contradict the limitations included in the assessed RFC, and it is not particularly useful to the Court in assessing the ALJ's determination regarding Plaintiff's ability to sustain

8

competitive employment. Accordingly, Dr. Minotti's opinion that Plaintiff is permanently disabled does not change the disability analysis in this case.").

18.     Finally, Plaintiff underwent chiropractic treatment by Dr. Dragonette from April to August of 2013. (R. at 836-44, 846-54, 856-57). Dr. Dragonette evaluated Plaintiff on June 5, 2013, diagnosed him with lumbar disc syndrome/protrusion/herniation, lumbosacral stain/sprain, and parathesia. (R. at 851). Dr. Dragonette concluded that Plaintiff had a 100% temporary impairment and opined that he could not return to work due to his pain. (R. at 852, 854). The ALJ reasonably afforded "no significant weight" to this medical source statement because the "medical documentation [was] vague," that Dr. Dragonette's opinion was merely that of a non-acceptable medical source (chiropractor) and appeared to only diagnose Plaintiff based on his subjective complaints "without conducting a thorough examination with a function by function assessment." (R. at 18).

19.     The Court finds that the ALJ properly and adequately discussed his reasons for assigning "little weight" to the medical opinions in the record and, accordingly, his RFC determination rests on substantial evidence. See Rivera v. Berryhill, 312 F. Supp. 3d 375, 380 (W.D.N.Y. 2018) (finding an RFC determination supported by substantial evidence were "the ALJ discussed the medical opinion evidence, set forth his reasoning for the weight afforded to each opinion, and cited and discussed specific evidence in the record which supported his determination"). While Plaintiff argues that the ALJ's failure to assign more than "little" or "some" weight to the medical opinions in the record amounts reversible error, it is well established that "an ALJ's conclusion need not 'perfectly correspond with any of the opinions of medical sources cited in his decision.'" Wynn v.

Comm'r of Soc. Sec., 342 F. Supp. 3d 340, 348 (W.D.N.Y. 2018) (quoting Matta, 508 F. App'x at 56). "Simply because the ALJ affords no single opinion controlling weight does not mean that [he] substitutes [his] own expertise of the medical proof for medical opinion." Id. (internal citations, quotation marks, and alterations omitted). "Rather. what is required is that the ALJ explain the bases for [his] findings with sufficient specificity to permit meaningful review." Id. (internal citations, quotation marks, and alterations omitted). Because the ALJ did so here, there is no basis to conclude that the ALJ here substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015).

20. Plaintiff also argues that the RFC is inadequate because the ALJ did not explicitly discuss the August 13, 2013 opinion of independent medical examiner Dr. Melvin Brothman and "overlook[ed]" evidence generated after the Date Last Insured. (Pl.'s Br. at 17, 23). An ALJ's decision need not "mention [] every item of testimony presented" or "reconcile explicitly every conflicting shred of medical testimony"; rather, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010). It is also true that, "[w]hile ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion." Boyd v. Colvin, No. 6:15-CV-06667 (MAT), 2016 WL 7155241, at *4 (W.D.N.Y. Dec. 8, 2016). However, in deciding a disability claim, it is the ALJ who is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). As discussed above, the ALJ discussed and

10

evaluated the medical evidence of record and, accordingly, his RFC determination rests on substantial evidence. In any case, the ALJ stated, at the outset of his decision, that he had carefully considered "all of the evidence," whether or not explicitly discussed. (R. at 12). And finally, Plaintiff's assertion that Dr. Brothman's opinion "was the only medical opinion of record that gave specific functional limitations" and therefore it was "imperative" that the ALJ evaluate it, as discussed above, the ALJ evaluated medical opinions from four separate physicians, all of whom opined on Plaintiff's functional limitations.

21. Finally, Plaintiff argues that the ALJ's RFC finding "failed to properly assess Plaintiff's inability to maintain minimal standards of attendance in any occupation," primarily, the Vocational Expert's general testimony that "it would be difficult to maintain employment" if an individual was absent, arrived late, or left early more than one day per month in any given occupation. (Pl.'s Br. at 24-25). This argument is belied by the ALJ's written decision, which explicitly discusses the Vocational Expert's testimony and concludes, based on that testimony and the other evidence of record, that "a finding of 'not disabled'" was "appropriate under the framework" of the rules and regulations discussing jobs in the national economy. (R. at 20).

22. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no reversible error. The decision contains a thorough discussion of the medical evidence supporting the ALJ's determination that Plaintiff is not disabled. Plaintiff's Motion for Judgment on the Pleadings is therefore denied. Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     March 29, 2019
             Buffalo, NY

                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge